| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS GALVESTON DIVISION |
|---|---|

| | | |
|---|---|---|
| JOSEPH LOWRY, | § | |
| | § | |
| *Plaintiff(s)*, | § | |
| | § | |
| v. | § | |
| | § | |
| CITY OF LAMARQUE, TEXAS; | § | |
| KEITH BELL, in his individual | § | No. _____ |
| capacity and in his official capacity; | § | Jury |
| KIMBERLEY YANCY, in her | § | |
| individual capacity and in her official | § | |
| capacity; and RANDALL ARAGON, in | § | |
| his individual capacity and in his official | § | |
| capacity, | § | |
| | § | |
| *Defendant(s)*. | § | |

## PLAINTIFF JOSEPH LOWRY'S ORIGINAL COMPLAINT

Plaintiff Joseph Lowry (referred to as "Lowry") brings this action under 42 U.S.C. § 1983 against Defendant City of LaMarque, Texas (referred to as "LaMarque"); Defendant Keith Bell (referred to as "Bell"); Defendant Kimberley Yancy (referred to as "Yancy"); and Defendant Randall Aragon (referred to as "Aragon"). As explained below, LaMarque, Bell, Yancy and Aragon violated Lowry's clearly established constitutional rights.

## I. Nature of Suit

1.      Lowry's claims arise under 42 U.S.C. § 1983, U.S. Const. amend I and U.S. Const. amend XIV.

2.      LaMarque, Bell, Yancy and Aragon violated Lowry's clearly established constitutional rights when they banned him from posting on social media, removed signs for political causes supported by him, threatened his safety, declared him an enemy of LaMarque and attempted to expel him from the city.

3.      By way of this action, Lowry seeks equitable relief, injunctive relief, actual damages, compensatory damages, punitive damages, attorney's fees, costs, prejudgment interest and postjudgment interest for violations of his constitutional rights.

## II. Jurisdiction & Venue

4.      This action arises under a federal statute, 42 U.S.C. § 1983. 28 U.S.C. § 1331 (federal-question jurisdiction).

5.      This action seeks to redress the deprivation of rights, privileges, and/or immunities guaranteed by the United States Constitution. 28 U.S.C. § 1343.

6.      Venue is proper in this district and division because LaMarque, Bell, Yancy and Aragon reside in this district and division. 28 U.S.C. § 1391(b)(1).

7.     Venue is proper in this district and division because a substantial part of the events or omissions giving rise to Lowry's claim(s) occurred in this district and division. 28 U.S.C. § 1391(b)(2).

### III. Parties

8.      Lowry is an individual who resides in Galveston County, Texas.

9.      LaMarque is a political subdivision of the State of Texas and may be served with process by serving its mayor, clerk, secretary or treasurer. *See*, Tex. Civ. Prac. & Rem. Code § 17.024(a).

10.      Bell is an individual who resides in Galveston County, Texas and who may be served with process at:

> 111 Bayou Road
> La Marque, Texas  77568

or wherever he may be found; he is sued both in his individual capacity (for monetary damages) and his official capacity (for injunctive and declaratory relief).

11.      Yancy is an individual who resides in Galveston County, Texas and who may be served with process at:

> 111 Bayou Road
> La Marque, Texas  77568

or wherever she may be found; she is sued both in her individual capacity (for monetary damages) and her official capacity (for injunctive and declaratory relief).

12.      Aragon is an individual who resides in Galveston County, Texas and who may be served with process at:

> 111 Bayou Road
> La Marque, Texas  77568

or wherever he may be found; he is sued both in his individual capacity (for monetary damages) and his official capacity (for injunctive and declaratory relief).

## IV.  Facts

13.    Lowry is a resident of LaMarque, a business owner and an activist.

14.    He fights hard to (1) reduce the tax burden on LaMarque residents; (2) ensure that their money is spent wisely and (3) expose corruption and misconduct by politicians.

15.    And when elected officials breach the public trust—for whatever reason—Lowry campaigns to remove and replace them.

16.    Lowry does all of this with the goal of improving the community he calls home and raising the living standards for LaMarque residents.

17.    Like many, Lowry expresses his views on social media platforms, including on LaMarque's Facebook page.

18.    When Lowry criticizes LaMarque and its elected officials, he is speaking as a citizen on matters of public concern (for example, violations of law, government corruption, ineptitude, finance and taxes).

19.    Some elected and other government officials—including, Bell (the mayor of LaMarque), Yancy (a councilmember) and Aragon (police chief and interim city

manager)—do not share Lowry's views; in fact, they strongly disagree with Lowry on just about everything.

20.     They also resent having their misconduct made available for public consumption.

21.     But, as the Supreme Court put it:

> If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalist, religion, or other matters of opinion or force citizens to confess by word or act their faith therein. If there are any circumstances which permit an exception, they do not occur to us.

*West Virginia St. Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943).

22.     And despite this clearly established constitutional right to engage in dissenting, critical or unpopular speech, LaMarque, Bell, Yancy and Aragon have censored and punished Lowry for publicly expressing viewpoints on matters of public concern that are critical of or otherwise unfavorable to them.

23.     For example, when Lowry posts comments critical of LaMarque's administration (including, Bell, Yancy and Aragon) on the city's Facebook page, his comments are removed, and he is banned from posting.

24.     Lowry has resorted to posting under pseudonyms, but they too are deleted and the accounts he used to post them are banned.

25.     Citing city ordinances, political signage for causes with which Lowry is associated (and that are critical of are LaMarque, Bell, Yancy and Aragon) is frequently removed even though other signage (that is supportive of LaMarque, Bell, Yancy and Aragon) is left untouched.

26.     LaMarque, Bell, Yancy and Aragon and those acting at their direction also frequently refuse to turn over public records to Lowry in spite of a legal obligation to do so.

27.     Lowry has no meaningful way of appealing LaMarque's decision to ban him from posting on social media or the censorship of his political signage or the refusal to turn over public records.

28.     On top of that, both Yancy (a councilmember) and Aragon (the police chief and interim city manager) have—during LaMarque city council meetings—declared Lowry to be a "domestic terrorist."

29.     In fact, Aragon (again, during a city council meeting) threatened the safety of LaMarque residents (including Lowry) at the hands of the city's police department if they were critical of Mayor Bell or any other members of city government; his comments recorded on video. *See*, https://www.youtube.com/watch?v=TTKt1Q4A9-Q.

30.     Were that not enough, agents of Bell, Yancy and Aragon (including Mandalyn Salazar), organized a protest—complete with city-approved permits—

directly in front of Lowry's home with the stated purpose of exiling Lowry from the city.

31.    The conduct of LaMarque, Bell, Yancy and Aragon evidences an official policy and longstanding custom intended to chill dissenting speech and manipulate a public forum so that only viewpoints and speech favorable to and complimentary of them are expressed.

32.    The conduct of LaMarque, Bell, Yancy and Aragon has deprived Lowry of his clearly established rights under the First Amendment and the Fourteenth Amendment of the United States Constitution; he is, therefore, entitled declaratory and injunctive relief, actual damages, monetary damages, and attorney's fees and costs.

33.    LaMarque has a custom, policy and/or practice of suppressing constitutionally protected speech.

34.    Consistent with LaMarque's custom, policy and/or practice of suppressing constitutionally protected speech, city officials banned Lowry from posting on social media, removed signs for political causes supported by him, declared him an enemy of LaMarque and are attempting to exile him using, among other things, threats against his safety.

35.     LaMarque's customs, policies and/or practices, individually and in the aggregate, proximately caused grievous, permanent injury to Lowry, including great distress, physical pain, mental anguish, fear, suffering and economic damages.

36.     LaMarque's, Bell's, Yancy's and Aragon's wrongful acts have directly and/or proximately caused grievous, permanent injury to Lowry, including great emotional distress, physical pain, mental anguish, fear, humiliation, embarrassment, degradation, injury to his reputation, suffering and economic damages.

37.     LaMarque Bell, Yancy and Aragon engaged in these wrongful acts with malice or with reckless indifference to Lowry's clearly established constitutional rights.

### V.  Count One—
### Violation of 42 U.S.C. § 1983/
### Lowry's First Amendment Rights: Freedom of Speech
### (Bell, Yancy and Aragon in their individual and official capacities)

38.     Lowry adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

39.     Bell, Yancy and Aragon engaged in viewpoint-based discrimination and censorship of Lowry's speech about matters of public concern in a public forum in violation of Lowry's rights under the First Amendment and Fourteenth Amendment.

40.     Moreover, the decision by Bell, Yancy and Aragon to ban Lowry from posting about matters of public interest on LaMarque's Facebook page is an impermissible prior restraint of Lowry's speech.

41.     Bell's, Yancy's and Aragon's acts were undertaken at all times under the color of law.

42.     Bell, Yancy and Aragon were or should have been aware that their acts were unconstitutional; it is clearly established that an official or another acting under color of state law cannot censor or restrict speech or punish a speaker based on the viewpoint expressed regardless of forum.

43.     No reasonable official would so unlawfully, willingly and arbitrarily restrict speech on matters of public concern in the same manner as Bell, Yancy and Aragon have done and continue to do.

44.     Bell, Yancy and Aragon have knowingly and willfully censored and punished Lowry, as well others, with a reckless and callous disregard for their constitutional rights; they went so far as to formally declare Lowry as a public enemy disregard and to seek his expulsion from LaMarque.

45.     Bell, Yancy and Aragon were knowingly and willfully undertaken to retaliate against Lowry for his ongoing and past criticism of them, their activities, and their policies.

46.     Bell's, Yancy's and Aragon's actions injured Lowry in a way likely to chill a person of ordinary firmness from further participation in the public discourse and democratic process, including on Facebook.

47.     As a direct and proximate cause of Bell's, Yancy's and Aragon's unlawful acts, Lowry has been forced to limit his protected speech and other expressive activity for fear of further retaliation.

48.     As a direct and proximate cause of Bell's, Yancy's and Aragon's unlawful acts, Lowry has been deprived of her constitutional rights and suffered damage to his reputation, irritation, humiliation, and shame.

49.     As a result, Lowry is entitled to compensatory and punitive damages against Bell, Yancy and Aragon.

50.     Lowry is also entitled preliminary and permanent injunctive relief against Bell, Yancy and Aragon; their acts of punishing and censoring Lowry and his constitutionally protected speech because of his viewpoints are likely to continue absent injunctive relief.

51.     Lowry has and will continue to suffer considerable and irreparable harm without injunctive relief; he wants (1) all of his comments to be reinstated on LaMarque's Facebook page (2) to continue participating in public discourse on matters of public interest on the LaMarque Facebook page and (3) to be free of fear of retaliation for engaging in protected speech related to LaMarque, and its officials, policies, and conduct.

52.     There is no adequate remedy available at law to redress Lowry's injuries and to prevent further harm to him and to others.

53.     Lowry is likely to succeed on the merits of his claims; moreover, there is substantial public interest in ensuring that Bell, Yancy and Aragon cease engaging in viewpoint-based restriction and censorship of speech in any public forum.

54.     Lowry also seeks declaratory relief against Bell, Yancy and Aragon, attorney's fees under 42 U.S.C. § 1988 and for any further relief the Court deems just and proper.

55.     A justiciable controversy involving the continuing deprivation of Lowry's right to speak free of viewpoint discrimination under the First and Fourteenth Amendment exists between the parties. A declaratory judgment will serve to further resolve the dispute between the parties and thaw the chilling effects of Bell's, Yancy's and Aragon's acts and policies and further participation in local government from Lowry and other citizens.

### VI.  Count Two—
### Violation of 42 U.S.C. § 1983/
### Lowry's Fourteenth Amendment Rights: Due Process
### (Bell, Yancy and Aragon in their individual and official capacities)

56.     Lowry adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

57.     Bell, Yancy and Aragon removed Lowry's protected speech on matters of public concern on LaMarque's Facebook page without notice or legitimate expectation.

58.     Bell, Yancy and Aragon banned and continue to ban Lowry from posting on LaMarque's Facebook page without notice or legitimate expectation.

59.     Lowry has no means to appeal or to otherwise challenge Bell's, Yancy's and Aragon's removal of his comments and banning him from LaMarque's Facebook page.

60.     Bell's, Yancy's and Aragon's deprivation of Lowry's First Amendment rights without notice to him or affording him an opportunity to be heard constitutes a violation of his due process rights under the Fourteenth Amendment to the United States Constitution.

61.     At all times relevant to the allegations herein, Bell, Yancy and Aragon were clearly aware that their acts and policy and custom were unlawful, and no reasonable official would so unlawfully, willingly, and arbitrarily restrict speech, censor speech, and punish speakers in the same manner as Defendants have and continue to do.

62.     As a direct and proximate result of Bell's, Yancy's and Aragon's acts, which were done under the color of law, Lowry is entitled to damages in an amount to be proven at trial and preliminary and permanent injunctive relief.

63.     Lowry also seeks declaratory relief against Bell, Yancy and Aragon, attorneys' fees under 42 U.S.C. § 1988 and any further relief the Court deems just and proper.

64.     A justiciable controversy involving the continuing deprivation of Lowry's due process rights under the Fourteenth Amendment exists between the parties. A declaratory judgment will serve to further resolve the dispute between the parties and thaw the chilling effects of Bell's, Yancy's and Aragon's acts and policies and further participation in local government from Lowry and other citizens

### VII.  Count Three—
### *Monell* Claim Against Local Governmental Entity:
### Unconstitutional Local Government Custom, Policy or Practice
### (LaMarque)

65.     Lowry adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

66.     At all times relevant, LaMarque developed, ratified, enforced, and continue to enforce an official city policy and/or longstanding custom of removing and censoring speech concerning matters of public interest from the LaMarque's Facebook page, but only where such speech is critical of, unpopular with, or otherwise unfavorable to LaMarque and/or its officials (including Bell, Yancy and Aragon).

67.     LaMarque's official city policy and/or longstanding custom also calls for, among other things: (1) banning members of the public from LaMarque's Facebook

page; (2) declaring members of the public to be enemies of LaMarque ("domestic terrorists") and (3) threatening the safety of members of the public as retaliation and punishment for expressing critical or unpopular viewpoints on LaMarque's Facebook page or in public. LaMarque and its officials have and continue to enforce such bans without notice, without legitimate explanation, and without an opportunity to appeal or otherwise challenge the decision.

68.     This unconstitutional official city policy and/or longstanding custom, as alleged herein, was developed, ratified, and enforced, and continues to be enforced, under the color of law. The official city policy and/or longstanding custom was developed, ratified, enforced, and continues to be enforced through and by Bell, Yancy and Aragon, who are vested with final policy-making authority over law enforcement and other official LaMarque matters, where such authority was vested under state law or by formal and lawful delegation of authority.

69.     LaMarque's enforced and ongoing official city policy and/or longstanding custom of removing and censoring speech constitutes (1) an impermissible viewpoint-based restriction on speech in violation of the First and Fourteenth Amendments to the United States Constitution and (2) a violation of banned individuals' due process rights under the Fourteenth Amendment to the United States Constitution.

70.     At all times relevant, LaMarque and its officials were or should have been aware that the official policy and/or longstanding custom as alleged were unlawful. It is clearly established that a state actor cannot censor or restrict speech, or punish a speaker, based on the viewpoint expressed, regardless of the forum.

71.     No local government or reasonable official with final policy-making authority would so unlawfully, willingly, and arbitrarily have developed, ratified and enforced the unconstitutional official city policy and/or longstanding custom described above.

72.     LaMarque's policy and/or custom extended to not providing notice and opportunity to be heard to citizens whose comments city officials removed from its Facebook page and who they banned from the page based on the viewpoint expressed, despite the clearly established liberty interest engaging in critical and dissenting expression on a matter of public concern in a public forum.

73.     LaMarque through its officials developed, ratified, enforced, and continues to enforce the official city policy and/or longstanding custom with a reckless and callous disregard for the constitutional rights of citizens.

74.     As a direct and proximate cause of LaMarque's unconstitutional official policy and/or longstanding custom, and the acts undertaken pursuant to it, Lowry has been barred from communicating on the public LaMarque Facebook page about

important matters of public interest and his safety threatened which restricts his ability to participate in public discourse and the democratic process.

75.     As a direct and proximate cause of LaMarques unconstitutional official policy and/or longstanding custom, and the acts undertaken pursuant to it, Lowry has been forced to limit his protected speech and other expressive activity for fear of further retaliation from city officials.

76.     As a direct and proximate cause of LaMarque's unconstitutional official policy and/or longstanding custom, and the acts undertaken pursuant to it, Lowry has suffered damage to his reputation, humiliation, irritation, and shame.

77.     LaMarque's unconstitutional viewpoint-based official policy and/or longstanding custom were the moving force behind the deprivation of LaMarque's First Amendment rights described above.

78.     As a result, Lowry is entitled to compensatory damages against LaMarque under 42 U.S.C. § 1983 in an amount to be proven at trial.

79.     Lowry is also entitled to preliminary and permanent injunctive relief against LaMarque and its continued enforcement of its unconstitutional official city policy and/or longstanding custom. LaMarque's acts of punishing, censoring, and chilling Lowry's constitutionally protected speech based on his viewpoints is likely to continue absent injunctive relief.

80.     As a direct and proximate cause of LaMarque's unconstitutional official policy and/or longstanding custom, other citizens have been punished and censored for expressing certain viewpoints, and have been forced to limit their protected speech and other protected expressive activity for fear of further retaliation from city officials.

81.     Absent injunctive relief, the harm alleged herein suffered by Lowry and others is likely to continue, as LaMarque officials are likely to continue enforcement and/or resume enforcement of their unconstitutional official city policy and/or longstanding custom.

82.     Lowry has and will continue to suffer considerable and irreparable harm if LaMarque is not enjoined from further enforcing its unconstitutional official policy and/or longstanding custom. Lowry desires to continue participating in public discourse on matters of public concern on the city's Facebook page and other public forums and in participating in the democratic process. Others have suffered the same or similar harm. There is no adequate remedy available at law sufficient to redress Lowry's injures and prevent further harm to Lowry and others.

83.     Lowry is likely to succeed on the merits of his claims. Moreover, there is substantial public interest in ensuring that LaMarque officials cease engaging in viewpoint-based censorship, restriction, and purposeful chilling of protected speech.

84.     Lowry also seeks declaratory relief as to LaMarque's unconstitutional official policy and/or longstanding custom, attorneys' fees and costs under 42 U.S.C. § 1988 and for any further relief the Court deems just and proper.

85.     A justiciable controversy involving the continuing deprivation of Lowry's free speech rights under the First and Fourteenth Amendments exists between the parties. A declaratory judgment will serve to further resolve the dispute between the parties and thaw the chilling effects of LaMarque's policy and/or custom and help further participation in local government by Lowry and other citizens.

## VIII.   Attorney's Fees & Costs

86.     Lowry adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

87.     Lowry is authorized to recover attorney's fees and costs on his claims by statute and under principles of equity.  *See, e.g*., 42 U.S.C. § 1988 (permitting recovery of attorney's fees for claims arising under 42 U.S.C. § 1983).

88.     Lowry has retained the professional services of the undersigned attorneys.

89.     Lowry has complied with the conditions precedent to recovering attorney's fees and costs.

90.     Lowry is entitled to recover his attorney's fees and costs.

91.     Lowry has incurred or may incur attorney's fees and costs in bringing this lawsuit.

92.     The attorney's fees and costs incurred or that may be incurred by Lowry were or are reasonable and necessary.

## IX.  Conditions Precedent

93.     All conditions precedent have been performed or have occurred.

## X.  Jury Demand

**94.**     Lowry demands a trial by jury on all issues triable to a jury.  *See*, Fed. R. Civ. P. 38.

## XI.  Relief Sought

95.     Lowry demands the following relief:

a.  declaratory and injunctive relief;

b.  damages in an amount to be established at trial resulting from the deprivation of Lowry's constitutional rights, including past and future economic loss, physical harm, emotional trauma, loss of privacy, and loss of reputation;

c.  damages in an amount to be established at trial sufficient (1) to punish LaMarque, Bell, Yancy and Aragon for their outrageous and malicious conduct which was undertaken with a reckless disregard for and with deliberate indifference to Lowry's constitutional rights; (2) to discourage LaMarque, Bell, Yancy and Aragon from engaging in similar conduct in the future and (3) to deter others from engaging in similar unlawful conduct;

d.  compensatory damages for severe mental anguish in the past and future and injury to his reputation resulting from the unlawful actions of LaMarque, Bell, Yancy and Aragon;

e.  an award of reasonable and necessary attorney's fees as specifically authorized by, among other things, 42 U.S.C. § 1988;

f.  an award of reasonable and necessary costs and expenses;

g.  prejudgment interest as provided by law;

h.  postjudgment interest as provided by law; and

i.  judgment for all the other relief to which Lowry may be entitled.

Respectfully Submitted,

MOORE & ASSOCIATES
Lyric Centre
440 Louisiana Street, Suite 1110
Houston, Texas 77002-1055
Telephone: (713) 222-6775
Facsimile: (713) 222-6739

By: _____
Melissa Moore
Tex. Bar No. 24013189
curt@mooreandassociates.net
Curt Hesse
Tex. Bar. No. 24065414
curt@mooreandassociates.net

**ATTORNEYS FOR PLAINTIFF**