| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS GALVESTON DIVISION |
|---|---|

| | |
|---|---|
| JOSEPH LOWRY, Individually and on Behalf of All Others Similarly Situated, §<br>§<br>§<br>*Plaintiff(s)*, §<br>§<br>v. §<br>§<br>CITY OF LA MARQUE, TEXAS; §<br>KEITH BELL, in his individual §<br>capacity and in his official capacity; §<br>KIMBERLEY YANCY, in her §<br>individual capacity and in her official §<br>capacity; and RANDALL ARAGON, in §<br>his individual capacity and in his official §<br>capacity, §<br>§<br>§<br>*Defendant(s)*. § | No. 3:22-cv-00112<br>Jury |

### PLAINTIFF JOSEPH LOWRY'S THIRD AMENDED COMPLAINT[1]

Plaintiff Joseph Lowry (referred to as "Lowry") brings this action under 42 U.S.C. § 1983 individually and on behalf of all similarly situated La Marque residents against Defendant City of La Marque, Texas (referred to as "La Marque"); Defendant Keith Bell (referred to as "Bell"); Defendant Kimberley Yancy (referred to as "Yancy"); and Defendant Randall Aragon (referred to as "Aragon"). As explained below, La

---

[1] This amended complaint is being filed with the opposing parties' written consent. *See*, Fed. R. Civ. P. 15(a)(2).

Marque, Bell, Yancy and Aragon violated Lowry's clearly established constitutional rights, and one or more of them defamed him.

## I. Nature of Suit

1.    Lowry's claims arise under 42 U.S.C. § 1983, U.S. Const. amend I and U.S. Const. amend XIV and under Texas law (defamation).

2.    La Marque, Bell, Yancy and Aragon violated Lowry's clearly established constitutional rights when they banned him from posting on social media, removed signs for political causes supported by him, threatened his safety, declared him an enemy of La Marque and attempted to expel him from the city.

3.    One or more of them also defamed Lowry.

4.    By way of this action, Lowry (sometimes referred to as the "Class Representative") seeks equitable relief, injunctive relief, actual damages, compensatory damages, punitive damages, attorney's fees, costs, prejudgment interest and postjudgment interest for violations of his constitutional rights and damages resulting from defamatory statements made about him.

## II. Jurisdiction & Venue

5.    This action arises under a federal statute, 42 U.S.C. § 1983. 28 U.S.C. § 1331 (federal-question jurisdiction).

6.     This action seeks to redress the deprivation of rights, privileges, and/or immunities guaranteed by the United States Constitution. 28 U.S.C. § 1343.

7.     The Court has supplemental jurisdiction over Lowry's state law claim(s) because it is so related to the federal claims that they form part of the same case or controversy under U.S. Const. art. III. 28 U.S.C. § 1367(a) (supplemental jurisdiction).

8.     Venue is proper in this district and division because La Marque, Bell, Yancy and Aragon reside in this district and division. 28 U.S.C. § 1391(b)(1).

9.     Venue is proper in this district and division because a substantial part of the events or omissions giving rise to Lowry's claim(s) occurred in this district and division. 28 U.S.C. § 1391(b)(2).

### III. Parties

10.     Lowry is an individual who resides in Galveston County, Texas.

11.     La Marque is a political subdivision of the State of Texas that has been served with process and has appeared.

12.     Bell is an individual who has been served with process and has appeared; he is being sued in his individual capacity as to compensatory and punitive damages and in his official capacity as to injunctive and declaratory relief.

13.     Yancy is an individual who has been served with process and has appeared; she is being sued in her individual capacity as to compensatory and punitive damages and in her official capacity as to injunctive and declaratory relief.

14.     Aragon is an individual who has been served with process and has appeared; he is being sued in his individual capacity as to compensatory and punitive damages and in his official capacity as to injunctive and declaratory relief.

## IV.  Facts

15.     Lowry is a resident of La Marque, a business owner and an activist; he is both outspoken and politically active.

16.     He fights hard to (1) reduce the tax burden on La Marque residents; (2) ensure that their money is spent wisely and (3) expose corruption and misconduct by politicians.

17.     And when elected officials breach the public trust—for whatever reason—Lowry campaigns to remove and replace them.

18.      Lowry does all of this with the goal of improving the community he calls home and raising the living standards for La Marque residents.

19.     Like many, Lowry expresses his views on social media platforms, including on La Marque's Facebook page.

20.     When Lowry criticizes La Marque and its elected officials, he is speaking as a citizen on matters of public concern (for example, violations of law, government corruption, ineptitude, finance and taxes).

21.     Some elected and other government officials—including, Bell (the mayor of La Marque), Yancy (a councilmember) and Aragon (police chief and interim city manager)—do not share Lowry's views; in fact, they strongly disagree with Lowry on just about everything.

22.     They also resent having their misconduct made available for public consumption.

23.     But as the Supreme Court put it:

> If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalist, religion, or other matters of opinion or force citizens to confess by word or act their faith therein. If there are any circumstances which permit an exception, they do not occur to us.

*West Virginia St. Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943).

> [D]ebate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.

*New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

24. And despite this clearly established constitutional right to engage in dissenting, critical or unpopular speech—and "unpleasantly sharp attacks"—La Marque, Bell, Yancy and Aragon have censored and punished Lowry for publicly expressing viewpoints on matters of public concern that are critical of or otherwise unfavorable to them.

25. For example, when Lowry posts comments critical of La Marque's administration (including, Bell, Yancy and Aragon) on the city's Facebook page, his comments are removed, and he is temporarily banned from posting and/or tagging the city in his own posts.

26. Lowry has resorted to posting under pseudonyms, but they too are deleted and the accounts he used to post them are temporarily banned from posting and/or tagging the city in other posts.

27. Citing city ordinances—which either don't exist or are inapplicable—political signage for causes with which Lowry is associated (and that are critical of are La Marque, Bell, Yancy and Aragon) is frequently removed even though other signage (that is supportive of La Marque, Bell, Yancy and Aragon) is left untouched.

28. In fact, city workers have been documented *trespassing onto private property* to remove political signs that conflict with the views of elected officials:





29.     La Marque, Bell, Yancy and Aragon and those acting at their direction also frequently refuse to turn over public records to Lowry in spite of a legal obligation to do so.

30.     Lowry has no meaningful way of appealing La Marque's decision to ban him from posting on social media or the censorship of his political signage or the refusal to turn over public records.

31.     On top of that, both Yancy (a councilmember) and Aragon (the police chief and interim city manager) have—during La Marque city council meetings and on social media—declared Lowry to be a "domestic terrorist."

32.     Calling someone a "domestic terrorist" isn't mere name calling—it's accusing someone of criminal conduct. *See, e.g.*, 18 U.S.C. § 2331(5) ("[T]he term 'domestic terrorism' means activities that—(A) involve acts dangerous to human life that are a violation of the criminal laws of the United States or of any State; (B) appear to be intended—(i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and (C) occur primarily within the territorial jurisdiction of the United States[.]").

33.     In fact, Aragon (again, during a city council meeting) threatened the safety of La Marque residents (including Lowry) at the hands of the city's police department

if they were critical of Mayor Bell or any other members of city government; his comments recorded on video. *See*, https://www.youtube.com/watch?v=TTKt1Q4A9-Q.

34.     Were that not enough, agents of Bell, Yancy and Aragon (including Mandalyn Salazar), organized a protest—complete with city-approved (either implicitly or explicitly) permits, support from them and other elected officials, road closures and a police presence—directly in front of Lowry's home with the stated purpose of exiling Lowry from the city:



Mandalyn Agapita Salazar
His Mistress is not his family,  and she is his co-conspirator in his actions! Even promoting him as the  next mayor.  Which is laughable. You can't run for mayor with his criminal past!

You're right he is an a outsider! Can we deport him out of Texas for his terrorist threats? LOL



35.     Yancy has also filed a frivolous lawsuit in state court seeking to prohibit Lowry from attending city council meetings.

36.     In fact, Aragon ordered Lowry's arrest when he attended a city council meeting in violation of a temporary restraining order originating out of Yancy's lawsuit even though he knew that the restraining order—which was unconstitutional the moment it was issued—had already expired.

37.     Fortunately for Aragon, the officer ordered to arrest Lowry, Geoff Price, refused.

38.     Bell and Yancy are also part of a group of people (including Rechard Loftis, his daughter (who is an elected official in Texas City) and Mandalyn Salazar) conspiring to harm Lowry and his business as evidence by this text message exchange:

> **Loftis**: Gm. I started this text to bring us all on one accord. We are here have the goals … forward TOGETHER and to expose those that are openly and secretly trying to destroy us as a community, family and friends. We must band together and spread the word to those who want to joint our fight … NOT EVERYONE IS MEANT TO BE PART OF IT … we must chose (sic) wisely. We spoke last night on a formulating a plan lets (sic) put it together and destroy these devils … Joseph Lowry is job number one … you kill snakes by cutting of its head … so we expose him first for what he is we go after his business and his future clients putting his hate online for them to see and take the many he brags off from him … Then we move to the next one who sticks his or her head out of the sand …

> **Bell**: LMBO

> **Salazar**: Boy he doesn't know what's coming for him" lol

39.     The conduct of La Marque, Bell, Yancy and Aragon evidences an official policy and longstanding custom intended to chill dissenting speech and manipulate a public forum so that only viewpoints and speech favorable to and complimentary of them are expressed.

40.     The conduct of La Marque, Bell, Yancy and Aragon has deprived Lowry of his clearly established rights under the First Amendment and the Fourteenth

Amendment of the United States Constitution; he is, therefore, entitled declaratory and injunctive relief, actual damages, monetary damages, and attorney's fees and costs.

41.    La Marque has a custom, policy and/or practice of suppressing constitutionally protected speech.

42.    Consistent with La Marque's custom, policy and/or practice of suppressing constitutionally protected speech, city officials banned Lowry from posting on social media, removed signs for political causes supported by him, declared him an enemy of La Marque and are attempting to exile him using, among other things, overt threats against his safety.

43.    La Marque's customs, policies and/or practices, individually and in the aggregate, proximately caused grievous, permanent injury to Lowry, including great distress, physical pain, mental anguish, fear, suffering and economic damages.

44.    La Marque's, Bell's, Yancy's and Aragon's wrongful acts have directly and/or proximately caused grievous, permanent injury to Lowry, including great emotional distress, physical pain, mental anguish, fear, humiliation, embarrassment, degradation, injury to his reputation, suffering and economic damages.

45.    La Marque Bell, Yancy and Aragon engaged in these wrongful acts with malice or with reckless indifference to Lowry's clearly established constitutional rights.

### V.  Count One—
### Violation of 42 U.S.C. § 1983/
### Lowry's First Amendment Rights: Freedom of Speech
### (Bell, Yancy and Aragon in their individual and official capacities)

46.     Lowry adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

47.     Bell, Yancy and Aragon engaged in viewpoint-based discrimination and censorship of Lowry's speech about matters of public concern in a public forum in violation of Lowry's rights under the First Amendment and Fourteenth Amendment.

48.     Moreover, the decision by Bell, Yancy and Aragon to ban Lowry from posting about matters of public interest on La Marque's Facebook page is an impermissible prior restraint of Lowry's speech.

49.     Bell's, Yancy's and Aragon's acts were undertaken at all times under the color of law.

50.     Bell, Yancy and Aragon were or should have been aware that their acts were unconstitutional; it is clearly established that an official or another acting under color of state law cannot censor or restrict speech or punish a speaker based on the viewpoint expressed regardless of forum.

51.     No reasonable official would so unlawfully, willingly and arbitrarily restrict speech on matters of public concern in the same manner as Bell, Yancy and Aragon have done and continue to do.

52.     Bell, Yancy and Aragon have knowingly and willfully censored and punished Lowry, as well others, with a reckless and callous disregard for their constitutional rights; they went so far as to formally declare Lowry as a public enemy disregard and to seek his expulsion from La Marque.

53.     Bell, Yancy and Aragon were knowingly and willfully undertaken to retaliate against Lowry for his ongoing and past criticism of them, their activities, and their policies.

54.     Bell's, Yancy's and Aragon's actions injured Lowry in a way likely to chill a person of ordinary firmness from further participation in the public discourse and democratic process, including on Facebook.

55.     As a direct and proximate cause of Bell's, Yancy's and Aragon's unlawful acts, Lowry has been forced to limit his protected speech and other expressive activity for fear of further retaliation.

56.     As a direct and proximate cause of Bell's, Yancy's and Aragon's unlawful acts, Lowry has been deprived of her constitutional rights and suffered damage to his reputation, irritation, humiliation, and shame.

57.     As a result, Lowry is entitled to compensatory and punitive damages against Bell, Yancy and Aragon in their individual capacities.

58.     Lowry is also entitled preliminary and permanent injunctive relief against Bell, Yancy and Aragon in their official capacities; their acts of punishing and censoring Lowry and his constitutionally protected speech because of his viewpoints are likely to continue absent injunctive relief.

59.     Lowry has and will continue to suffer considerable and irreparable harm without injunctive relief; he wants (1) all of his comments to be reinstated on La Marque's Facebook page (2) to continue participating in public discourse on matters of public interest on the La Marque Facebook page and (3) to be free of fear of retaliation for engaging in protected speech related to La Marque, and its officials, policies, and conduct.

60.     There is no adequate remedy available at law to redress Lowry's injuries and to prevent further harm to him and to others.

61.     Lowry is likely to succeed on the merits of his claims; moreover, there is substantial public interest in ensuring that Bell, Yancy and Aragon cease engaging in viewpoint-based restriction and censorship of speech in any public forum.

62.     Lowry also seeks declaratory relief against Bell, Yancy and Aragon in their official capacities, attorney's fees under 42 U.S.C. § 1988 and for any further relief the Court deems just and proper.

63.     A justiciable controversy involving the continuing deprivation of Lowry's right to speak free of viewpoint discrimination under the First and Fourteenth Amendment exists between the parties. A declaratory judgment will serve to further resolve the dispute between the parties and thaw the chilling effects of Bell's, Yancy's and Aragon's acts and policies and further participation in local government from Lowry and other citizens.

## VI.  Count Two—
### Violation of 42 U.S.C. § 1983/
### Lowry's Fourteenth Amendment Rights: Due Process
### (Bell, Yancy and Aragon in their individual and official capacities)

64.     Lowry adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

65.     Bell, Yancy and Aragon removed Lowry's protected speech on matters of public concern on La Marque's Facebook page without notice or legitimate expectation.

66.     Bell, Yancy and Aragon temporarily banned and, from time to time, ban Lowry from posting on La Marque's Facebook page and/or tagging the city in his own posts without notice or legitimate expectation.

67.     Lowry has no means to appeal or to otherwise challenge Bell's, Yancy's and Aragon's removal of his comments and banning him from La Marque's Facebook page and/or tagging the city in his own posts.

68.     Bell's, Yancy's and Aragon's deprivation of Lowry's First Amendment rights without notice to him or affording him an opportunity to be heard constitutes a violation of his due process rights under the Fourteenth Amendment to the United States Constitution.

69.     At all times relevant to the allegations herein, Bell, Yancy and Aragon were clearly aware that their acts and policy and custom were unlawful, and no reasonable official would so unlawfully, willingly, and arbitrarily restrict speech, censor speech, and punish speakers in the same manner as they have and continue to do.

70.     As a direct and proximate result of Bell's, Yancy's and Aragon's acts, which were done under the color of law, Lowry is entitled to damages from them in their individual capacities in an amount to be proven at trial and preliminary and permanent injunctive relief against them in their official capacities.

71.     Lowry also seeks declaratory relief against Bell, Yancy and Aragon in their official capacities, attorneys' fees under 42 U.S.C. § 1988 and any further relief the Court deems just and proper.

72.     A justiciable controversy involving the continuing deprivation of Lowry's due process rights under the Fourteenth Amendment exists between the parties. A declaratory judgment will serve to further resolve the dispute between the parties and

thaw the chilling effects of Bell's, Yancy's and Aragon's acts and policies and further participation in local government from Lowry and other citizens.

### VII. Count Three—
### *Monell* Claim Against Local Governmental Entity:
### Unconstitutional Local Government Custom, Policy or Practice
### (La Marque)

73.     Lowry adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

74.     At all times relevant, La Marque developed, ratified, enforced, and continue to enforce an official city policy and/or longstanding custom of removing and censoring speech concerning matters of public interest from the La Marque's Facebook page, but only where such speech is critical of, unpopular with, or otherwise unfavorable to La Marque and/or its officials (including Bell, Yancy and Aragon).

75.     La Marque's official city policy and/or longstanding custom also calls for, among other things: (1) banning members of the public from La Marque's Facebook page and/or tagging the city in their posts; (2) declaring members of the public to be enemies of La Marque ("domestic terrorists") and (3) threatening the safety of members of the public as retaliation and punishment for expressing critical or unpopular viewpoints on La Marque's Facebook page or in public. La Marque and its officials have and continue to enforce such bans without notice, without legitimate explanation, and without an opportunity to appeal or otherwise challenge the decision(s).

76.     This unconstitutional official city policy and/or longstanding custom, as alleged herein, was developed, ratified, and enforced, and continues to be enforced, under the color of law. The official city policy and/or longstanding custom was developed, ratified, enforced, and continues to be enforced through and by Bell, Yancy and Aragon, who are vested with final policy-making authority over law enforcement and other official La Marque matters, where such authority was vested under state law or by formal and lawful delegation of authority.

77.     La Marque's enforced and ongoing official city policy and/or longstanding custom of removing and censoring speech constitutes (1) an impermissible viewpoint-based restriction on speech in violation of the First and Fourteenth Amendments to the United States Constitution and (2) a violation of banned individuals' due process rights under the Fourteenth Amendment to the United States Constitution.

78.     At all times relevant, La Marque and its officials were or should have been aware that the official policy and/or longstanding custom as alleged were unlawful. It is clearly established that a state actor cannot censor or restrict speech, or punish a speaker, based on the viewpoint expressed, regardless of the forum.

79.     No local government or reasonable official with final policy-making authority would so unlawfully, willingly, and arbitrarily have developed, ratified and

enforced the unconstitutional official city policy and/or longstanding custom described above.

80.     La Marque's policy and/or custom extended to not providing notice and opportunity to be heard to citizens whose comments city officials removed from its Facebook page and who they banned from the page and/or tagging the city in their own posts based on the viewpoint expressed, despite the clearly established liberty interest engaging in critical and dissenting expression on a matter of public concern in a public forum.

81.     La Marque through its officials developed, ratified, enforced, and continues to enforce the official city policy and/or longstanding custom with a reckless and callous disregard for the constitutional rights of citizens.

82.     As a direct and proximate cause of La Marque's unconstitutional official policy and/or longstanding custom, and the acts undertaken pursuant to it, Lowry has been, from time to time, temporarily and arbitrarily barred from communicating on the public La Marque Facebook page and/or tagging the city in his own posts regarding important matters of public interest and his safety threatened which restricts his ability to participate in public discourse and the democratic process.

83.     As a direct and proximate cause of La Marques unconstitutional official policy and/or longstanding custom, and the acts undertaken pursuant to it, Lowry has

been forced to limit his protected speech and other expressive activity for fear of further retaliation from city officials.

84.     As a direct and proximate cause of La Marque's unconstitutional official policy and/or longstanding custom, and the acts undertaken pursuant to it, Lowry has suffered damage to his reputation, humiliation, irritation, and shame.

85.     La Marque's unconstitutional viewpoint-based official policy and/or longstanding custom were the moving force behind the deprivation of Lowry's First Amendment rights described above.

86.     As a result, Lowry is entitled to compensatory damages against La Marque under 42 U.S.C. § 1983 in an amount to be proven at trial.

87.     Lowry is also entitled to preliminary and permanent injunctive relief against La Marque and its continued enforcement of its unconstitutional official city policy and/or longstanding custom. La Marque's acts of punishing, censoring, and chilling Lowry's constitutionally protected speech based on his viewpoints is likely to continue absent injunctive relief.

88.     As a direct and proximate cause of La Marque's unconstitutional official policy and/or longstanding custom, other citizens have been punished and censored for expressing certain viewpoints and have been forced to limit their protected speech and other protected expressive activity for fear of further retaliation from city officials.

89.     Absent injunctive relief, the harm alleged herein suffered by Lowry and others is likely to continue, as La Marque officials are likely to continue enforcement and/or resume enforcement of their unconstitutional official city policy and/or longstanding custom.

90.     Lowry has and will continue to suffer considerable and irreparable harm if La Marque is not enjoined from further enforcing its unconstitutional official policy and/or longstanding custom. Lowry desires to continue participating in public discourse on matters of public concern on the city's Facebook page and other public forums and in participating in the democratic process. Others have suffered the same or similar harm. There is no adequate remedy available at law sufficient to redress Lowry's injures and prevent further harm to Lowry and others.

91.     Lowry is likely to succeed on the merits of his claims. Moreover, there is substantial public interest in ensuring that La Marque officials cease engaging in viewpoint-based censorship, restriction, and purposeful chilling of protected speech.

92.     Lowry also seeks declaratory relief as to La Marque's unconstitutional official policy and/or longstanding custom, attorneys' fees and costs under 42 U.S.C. § 1988 and for any further relief the Court deems just and proper.

93.     A justiciable controversy involving the continuing deprivation of Lowry's free speech rights under the First and Fourteenth Amendments exists between the

parties. A declaratory judgment will serve to further resolve the dispute between the parties and thaw the chilling effects of La Marque's policy and/or custom and help further participation in local government by Lowry and other citizens.

## VIII. Count IV—Defamation
### (Aragon in his individual capacity)

94.     Lowry adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

95.     Aragon told members of the La Marque community, during a city council meeting, that Lowry is a domestic terrorist.

96.     Aragon knew or should have known that Lowry is not a domestic terrorist.

97.     Aragon's statement(s) was defamatory per se.

98.     As a result of Aragon's statement(s), Lowry suffered damages.

## IX. Count V—Defamation
### (Yancy in her individual capacity)

99.     Lowry adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

100.     Yancy told members of the La Marque community, during a city council meeting, that Lowry is a domestic terrorist.

101.     Yancy knew or should have known that Lowry is not a domestic terrorist.

102.     Yancy's statement(s) was defamatory per se.

103.    As a result of Yancy's statement(s), Lowry suffered damages.

## X.   Count VI—
## Class Action Allegations Under Fed. R. Civ. P. 23
## for Constitutional Violations
## (La Marque and Bell, Yancy and Aragon in their individual and official capacities)

104.    Lowry adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

105.    Lowry, the Class Representative, brings Count One, Count Two and Count 3 under Fed. R. Civ. P. 23 on behalf of the following class of persons:

> All residents of the City of La Marque, Texas (referred to as the La Marque Class)

106.    The claims of the La Marque Class, if certified for class-wide treatment, will be pursued by all similarly situated persons who do not affirmatively opt-out of the class.

107.    The members of the La Marque Class are so numerous that joinder of all members is impracticable; the exact number of putative class members is unknown at the present time but should be over one hundred (100).

108.    There are numerous questions of law and fact common to the La Marque Class, including whether city officials and/or La Marque violated the constitutional rights of the La Marque Class by, among other things, censoring political speech.

109. Lowry's claims are typical of the claims of the La Marque Class because Lowry and the members of the La Marque Class are all subjected to, among other things, policies that permit discrimination based on political views; in other words, Lowry's claims and the claims of the La Marque Class arise out of a common course of conduct of La Marque and Bell, Yancy and Aragon and are based on the same legal and remedial theories.

110. Lowry will fairly and adequately protect the interests of the La Marque Class and has retained competent and capable attorneys who are experienced trial lawyers with significant experience in complex employment litigation (including class actions, collective actions, and multidistrict litigation); Lowry and his counsel are committed to prosecuting this action vigorously on behalf of the La Marque Class, have the financial resources to do so and do not have interests that are contrary to or that conflict with those of the proposed class.

111. Class certification of the La Marque Class is appropriate under Fed. R. Civ. P. 23 because questions of law and fact common to the putative class members predominate over any questions affecting only individual members of the class; adjudication of these common issues in a single action has important and desirable advantages of judicial economy, and there are no unusual difficulties likely to be encountered in the management of this case as a class action.

112. The class action mechanism is superior to any alternatives that may exist for the fair and efficient adjudication of these claims because:

    a. proceeding as a class action would permit the large number of injured parties to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of evidence, effort and judicial resources;

    b. a class action is the only practical way to avoid the potentially inconsistent results that numerous individual trials are likely to generate;

    c. class treatment is the only realistic means by which the La Marque Class can effectively litigate against a governmental entity;

    d. in the absence of a class action, the defendants would be permitted to continue their unconstitutional conduct;

    e. numerous individual actions would place an enormous burden on the courts as they will be forced to take duplicative evidence and decide the same issues relating to the defendants' conduct over and over again.

113. La Marque and Bell, Yancy and Aragon acted or refused to act on grounds generally applicable to the La Marque Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to each class as a whole; prosecution of separate actions by members of the La Marque Class would create the risk of inconsistent or varying adjudications with respect to individual members of the La Marque Class that would establish incompatible standards of conduct for defendants.

114. Lowry will send notice to all members of the La Marque Class to the extent required by Fed. R. Civ. P. 23.

## XI.   Attorney's Fees & Costs

115.    Lowry adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

116.    Lowry is authorized to recover attorney's fees and costs on his claims by statute and under principles of equity.  *See, e.g.*, 42 U.S.C. § 1988 (permitting recovery of attorney's fees for claims arising under 42 U.S.C. § 1983).

117.    Lowry has retained the professional services of the undersigned attorneys.

118.    Lowry has complied with the conditions precedent to recovering attorney's fees and costs.

119.    Lowry is entitled to recover his attorney's fees and costs.

120.    Lowry has incurred or may incur attorney's fees and costs in bringing this lawsuit.

121.    The attorney's fees and costs incurred or that may be incurred by Lowry were or are reasonable and necessary.

## XII.  Conditions Precedent

122.    All conditions precedent have been performed or have occurred.

## XIII.  Jury Demand

123.    Lowry demands a trial by jury on all issues triable to a jury.  *See*, Fed. R. Civ. P. 38.

## XIV. Relief Sought

124.   Lowry demands the following relief:

a.   an order allowing this action to proceed as a class action under Fed. R. Civ. P. 23;

b.   an order appointing Lowry representative of the La Marque Class;

c.   an order appointing MOORE & ASSOCIATES class counsel;

d.   an incentive award for Lowry for serving as class representative if the Court allows this action to proceed as a class action under Fed. R. Civ. P. 23

e.   declaratory and injunctive relief;

f.   damages in an amount to be established at trial resulting from the deprivation of Lowry's constitutional rights, including past and future economic loss, physical harm, emotional trauma, loss of privacy, and loss of reputation;

g.   damages in an amount to be established at trial sufficient (1) to punish La Marque, Bell, Yancy and Aragon for their outrageous and malicious conduct which was undertaken with a reckless disregard for and with deliberate indifference to Lowry's constitutional rights; (2) to discourage La Marque, Bell, Yancy and Aragon from engaging in similar conduct in the future and (3) to deter others from engaging in similar unlawful conduct;

h.   compensatory damages for severe mental anguish in the past and future and injury to his reputation resulting from the unlawful actions of La Marque, Bell, Yancy and Aragon;

i.   an award of reasonable and necessary attorney's fees as specifically authorized by, among other things, 42 U.S.C. § 1988;

j.   an award of reasonable and necessary costs and expenses;

k.   prejudgment interest as provided by law;

l.   postjudgment interest as provided by law; and

m. judgment for all the other relief to which Lowry may be entitled.

Respectfully Submitted,

MOORE & ASSOCIATES
Lyric Centre
440 Louisiana Street, Suite 1110
Houston, Texas 77002-1055
Telephone: (713) 222-6775
Facsimile: (713) 961-3938

By: s/ Curt Hesse
Melissa Moore
Tex. Bar No. 24013189
curt@mooreandassociates.net
Curt Hesse
Tex. Bar. No. 24065414
curt@mooreandassociates.net

**ATTORNEYS FOR PLAINTIFF**

### CERTIFICATE OF SERVICE

As required by Fed. R. Civ. P. 5(a)(1), I certify that I served a copy of this document on all parties or their attorney(s) of record—who are listed below—in accordance with Fed. R. Civ. P. 5(b) on the date indicated as follows:

Mr. Steven Selbe
sselbe@grsm.com
GORDON REES SCULLY MANSUKHANI
TransWestern Tower
1900 West Loop South, Suite 1000
Houston, TX 77027
Facsimile: (123) 456-7890
*Attorney(s) for Defendants*

☐ mail
☐ personal delivery
☐ leaving it at ☐ office ☐ dwelling
☐ leaving it with court clerk
☐ electronic means
☐ other means
☒ CM/ECF system

| | |
|---|---|
| March 15, 2023 | s/ Curt Hesse |
| Date | Curt Hesse |