United States District Court
Southern District of Texas
**ENTERED**
January 25, 2024
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

GALVESTON DIVISION

No. 3:22-cv-112

JOSEPH LOWRY, *PLAINTIFF*,

v.

CITY OF LA MARQUE, TEXAS, *ET AL.*, *DEFENDANTS*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

The defendants have moved for judgment on the pleadings. Dkt. 28. The court will grant the motion in part and deny it in part.

### I.  Background

The plaintiff—Joseph Lowry—resides in La Marque. Dkt. 24 ¶¶ 10, 15. He is a business owner and political activist. *Id.* ¶ 15. Lowry has criticized La Marque and its elected officials—including Mayor Keith Bell, Councilwoman Kimberley Yancy, and the chief of police, Randall Aragon—(collectively "the defendants") on La Marque's Facebook page. *Id.* ¶¶ 19–21.

According to Lowry, the defendants "strongly disagree with [him] on just about everything" and "resent having their misconduct made available for public consumption." *Id.* ¶¶ 21–22. Lowry alleges that the defendants, in response to his attacks, have censored and punished him for his critical comments. *Id.* ¶ 24. For example, he maintains that the defendants have removed his comments from La Marque's Facebook page and temporarily banned him from posting or tagging—even when he posts under pseudonyms. *Id.* ¶¶ 25–26. During a city-council meeting, Lowry avers that Yancy and Aragon called him a "domestic terrorist." *Id.* ¶ 31. He further contends that Yancy "filed a frivolous lawsuit in state court seeking to prohibit Lowry from attending city[-]council meetings." *Id.* ¶ 35. Similarly, Aragon has allegedly threatened to arrest Lowry under a temporary restraining order if he attended future meetings. *Id.* ¶ 36.

Lowry also highlights conduct by other La Marque officials against him. City workers have trespassed onto his private property to remove political signs antithetical to the defendants. *Id.* ¶¶ 27–28. Lowry also alleges that the defendants' agents have organized a protest in front of his home "with the stated purpose of exiling Lowry from the city." *Id.* ¶ 34. And Lowry purports Bell and Yancy are part of a conspiracy to harm him and his businesses. *Id.* ¶ 38. Because of these actions, Lowry alleges that he has

"been forced to limit his protected speech and other expressive activity for fear of further retaliation." *Id.* ¶ 55.

In April 2022, Lowry sued the defendants. Dkt. 1. In an amended complaint, he primarily asserts First and Fourteenth Amendment violations under 42 U.S.C. § 1983. Dkt. 24 ¶¶ 46–93. He also brings defamation claims against Yancy and Aragon in their individual capacities for calling him a domestic terrorist during a city-council meeting. *Id.* ¶¶ 94–103. In addition, Lowry seeks class-action certification for "[a]ll residents of the City of La Marque." *Id.* ¶¶ 104–114. The defendants now move for judgment on the pleadings. Dkt. 28.

## II. Legal Standard

### A. Rule 12(c)

After the pleadings are closed but within such time as not to delay trial, any party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). A Rule 12(c) motion is "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990). Under Rule 12(c), the court considers whether the plaintiffs "would be entitled to relief under any set of facts or any possible theory that they could prove

'consistent with the allegations in their complaint.'" *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 326–27 (5th Cir. 2002).

"The standard for Rule 12(c) motions for judgment on the pleadings is identical to the standard for Rule 12(b)(6) motions to dismiss for failure to state a claim." *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019). Accordingly, to avoid dismissal, a plaintiff must allege enough facts to state a claim to relief that is facially plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded facts allow the court to reasonably infer that the defendant is liable for the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the pleadings, a court "accept[s] all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff." *White v. U.S. Corrections, L.L.C.*, 996 F.3d 302, 306–07 (5th Cir. 2021). But the court does not accept "[c]onclusory allegations, unwarranted factual inferences, or legal conclusions" as true. *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

### B. Section 1983

Section 1983 provides a private right of action for the deprivation of certain rights, privileges, and immunities. 42 U.S.C. § 1983. To sue under § 1983, a plaintiff must (1) allege that the defendant violated "a right

secured by the Constitution and laws of the United States" and (2) show that "a person acting under color of state law" committed the violation. *Petersen v. Johnson*, 57 F.4th 225, 231 (5th Cir. 2023) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). A claim under § 1983 may be brought against government employees in their individual or official capacities or against a governmental entity. *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997)).

### III.   Analysis

The defendants move for judgment on the pleadings, asking the court to dismiss Lowry's third amended complaint. Dkt. 28. To support their motion, the defendants include several exhibits that they contend disprove some of Lowry's allegations. Dkts. 28-1, 28-2, 28-3, 28-4. The court must first determine whether it may consider the defendants' attached evidence at this stage in the litigation before assessing the sufficiency of Lowry's pleadings. After reviewing the pleadings and the motion, the court renders judgment on some—but not all—of Lowry's claims.

### A. Considering Evidence

The defendants have attached four exhibits to their motion:

(1) an order from a Galveston County justice of the peace granting a peace bond against Lowry,

(2) a *Galveston Daily News* article discussing Lowry's conduct in petitioning to recall Bell,

(3) Lowry's Facebook comments on La Marque's Facebook posts, and

(4) a permit application and email correspondence for the alleged protest at Lowry's home.

*Id.* Generally, a district court considering a motion for judgment on the pleadings should "not consider evidence outside the pleadings." *Melancon v. Carnival Corp.*, 835 F. App'x 721, 723 n.5 (5th Cir. 2020) (per curiam). However, in *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000), the Fifth Circuit carved out a "limited exception to this rule: [a] court may consider documents attached to a motion to dismiss if the documents 'are referred to in the plaintiff's complaint and are central to the [plaintiff's] claims.'" *Herbst v. Deere & Co.*, No. 3:21-cv-44, 2021 WL 5567379, at *3 (S.D. Tex. Nov. 29, 2021) (alteration in original) (quoting *Collins*, 224 F.3d at 498–99).

The Fifth Circuit has not "articulated a test for determining when a document is 'central' to the plaintiff's claims." *In re Northstar Offshore*

*Grp., LLC*, 616 B.R. 695, 710 (Bankr. S.D. Tex. 2020) (quotation omitted). In *Collins*, the Fifth Circuit endorsed a district court's consideration of "an agreement and an assessment about a potential merger between two companies in determining the contract was not intended to benefit the plaintiffs/stock option holders." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Collins v. Morgan Stanley Dean Witter*, 60 F. Supp. 2d 614, 614 (S.D. Tex. 1999)).

Since then, the Fifth Circuit has reiterated that a contract attached to a motion to dismiss is "central" to a breach-of-contract claim raised in a complaint that refers to the contract. *See, e.g.*, *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).[1] The Fifth Circuit has signaled a reluctance to broadly extend the "one limited exception" outlined in *Collins* to other contexts. *See Scanlan*, 343 F.3d at 536. Some courts have limited the *Collins* exception to allow courts to consider "only those

---

[1] Notably, the *Collins* plaintiffs' failure to "object to, or appeal, the district court's consideration of [the defendant's] documents was central to [the Fifth Circuit's] approval of" the district court considering them. *Scanlan*, 343 F.3d at 536; *see also Dawes v. City of Dallas*, No. 3:17-CV-01424-X-BK, 2020 WL 3603090, at *2 (N.D. Tex. July 2, 2020) (relying on *Scanlan* and *Collins* to infer that "in assessing whether a document is central, a court should consider whether the plaintiff objects to the inclusion of the attached document").

documents necessary to establish an element of one of the plaintiff's claims." *In re Northstar Offshore Grp., LLC*, 616 B.R. at 710 (quotation omitted).

District courts may also consider matters "subject to judicial notice." *George v. SI Grp., Inc.*, 36 F.4th 611, 619 (5th Cir. 2022) (citing Fed. R. Evid. 201). Such matters include "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "A court may take judicial notice of 'a document filed in another court . . . to establish the fact of such litigation and related filings,' but generally cannot take notice of the findings of fact from other proceedings." *Ferguson v. Extraco Mortg. Co.*, 264 F. App'x 351, 352 (5th Cir. 2007) (quoting *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829–30 (5th Cir. 1998)). Still, the court "should only take judicial notice of facts *sparingly* at the pleading stage." *Knighton v. Univ. of Tex. at Arlington*, No. 4:18-cv-00792-Y, 2019 WL 13252502, at *3 (N.D. Tex. Aug. 20, 2019).

After reviewing the defendants' attached exhibits, the court will not consider them. The documents neither fall within the *Collins* exception nor are the documents matters "subject to judicial notice." Although the peace-

bond order is a document filed in another court, the defendants attach it to show that Lowry threatened violence and harassment against others. *See* Dkt. 28 at 2. It is inappropriate here to adopt the findings from the justice of the peace in unrelated litigation. Further, the defendants have not shown that the *Galveston Daily News* article "could not reasonably be questioned, nor that the facts were generally known within the district court's jurisdiction." *See Petrobras Am., Inc. v. Samsung Heavy Indus. Co.*, 9 F.4th 247, 255 (5th Cir. 2021) (internal quotation marks omitted). These exhibits are not subject to judicial notice at the pleading stage, so the court will not exercise its discretion to take such notice now.

The court also declines to exercise its discretion to consider the attached Facebook posts, permit application, and emails. Although Lowry's complaint alludes to the defendants blocking his Facebook account and taking adverse action against him for his criticisms, Lowry does not refer to any posts with enough specificity to identify them individually. *See Zuniga v. Yeary*, No. 1:18-CV-434-RP, 2020 WL 1329908, at *2 (W.D. Tex. Mar. 20, 2020) (refusing to consider individual Facebook posts when they "are not explicitly 'referred to' in [the plaintiff's] amended complaint"). And Lowry's posts before and after the lawsuit are not central to determining whether—at some point—the defendants blocked him from posting on La

Marque's Facebook page. Similarly, the protest allegedly organized in front of Lowry's home is not central to any element of Lowry's claims and instead merely constitutes evidence of what occurred before his lawsuit. Importantly, Lowry objects to considering this evidence, which cuts further against their consideration under *Collins*. *See Bob Davis Paint & Drywall Inc. v. Valspar Corp.*, 452 F. Supp. 3d 589, 597 (S.D. Tex. 2020) (citing *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)).

If the court adopted the defendants' exhibits, it would be acting "prematurely" by "preclud[ing] the opportunity for [the plaintiff] by subsequent proof to establish a claim supporting the allegations not refuted by exhibits." *See U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004). It will not do so here. Accordingly, the court declines to consider the exhibits the defendants attached to their motion.

### B. First Amendment Retaliation

"[T]he First Amendment prohibits not only direct limitations on speech but also adverse government action against an individual because of [his] exercise of First Amendment freedoms." *Colson v. Grohman*, 174 F.3d 498, 508 (5th Cir. 1999). To establish a First Amendment retaliation claim, a plaintiff must show that:

> (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendant's adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct.

*Reitz v. Woods*, 85 F.4th 780, 789 (5th Cir. 2023) (alterations adopted) (quoting *Keenan v. Tejada*, 290 F.3d 252, 258 (5th Cir. 2002)).

The defendants do not dispute that Lowry was engaged in a constitutionally protected activity. Instead, they raise three challenges to the sufficiency of the defendants' adverse actions. *First*, the defendants argue that Lowry's claims of being banned from La Marque's Facebook page are "blatantly contradicted" by their attached evidence. Dkt. 28 at 7–10. But as explained above, the court does not acknowledge that evidence now. At this stage, Lowry has plausibly alleged that the defendants temporarily banned him.

*Second*, the defendants contend that Lowry's allegations of "name calling" and other verbal threats are not actionable First Amendment violations. *Id.* at 11–12. To establish an adverse action, a plaintiff must "show[] that the plaintiffs' exercise of free speech has been curtailed." *Id.* (quoting *Keenan*, 290 F.3d at 259). A plaintiff fails to establish a First Amendment retaliation injury when he "alleged only that [he] was the

victim of criticism, an investigation (or an attempt to start one), and false accusations." *Colson*, 174 F.3d at 512; *see also Slegelmilch v. Pearl River Cnty. Hosp. & Nursing Home*, 655 F. App'x 235, 239–40 (5th Cir. 2016). "[R]etaliatory criticisms . . . that do not lead to some more tangible adverse action are not actionable under § 1983." *Matherne v. Larpenter*, No. 99-30746, 2000 WL 729066, at *3 (5th Cir. May 8, 2000). In contrast, the plaintiffs in *Keenan v. Tejada* demonstrated curtailment when they asserted that they "backed off from direct involvement in helping expose unlawful practices in the constable's office." *Keenan*, 290 F.3d at 260 (internal quotations omitted).

The defendants assert that their alleged comments that Lowry is a "domestic terrorist" and other similar epithets "are not of Constitutional moment." Dkt. 28 at 11 (quoting *Jackson v. Liberty County*, 860 F. Supp. 360, 363 (E.D. Tex. 1994)). Not disputing that generalized threats and insults do not amount to First Amendment violations, Lowry responds that the term "domestic terrorist" connotes that he committed a federal crime. Dkt. 31 at 7 (citing 18 U.S.C. § 2331(5), which defines "domestic terrorism"). Even so, the alleged verbal comments from the defendants are not actionable under the First Amendment. Lowry is understandably upset when he was allegedly publicly criticized and associated with domestic

terrorism, but he has failed to plausibly allege that such comments directly led to a tangible injury. *See Matherne*, 2000 WL 729066, at *3. Nor has Lowry plausibly alleged that being labeled a domestic terrorist would deter a person of ordinary firmness from continuing to criticize the defendants in public forums. *See Peterson v. Clanton*, No. 16-CV-10353, 2017 WL 3392901, at *3 (E.D. Mich. Apr. 24, 2017) (granting summary judgment on the plaintiff's First Amendment retaliation claim when the defendant labeled him a domestic terrorist). Even taking Lowry's allegations as true, the defendants labeling him a domestic terrorist cannot plausibly support his claim for First Amendment retaliation. Accordingly, the court grants the defendants' motion in part based on the defendants' verbal remarks toward Lowry.

*Third*, the defendants aver that they are entitled to judgment because Lowry did not plausibly allege that he suffered a cognizable injury related to their non-verbal conduct. Dkt. 28 at 12–13. In his complaint, Lowry alleges that city workers have trespassed onto his property. Dkt. 24 ¶ 28. Following critical comments, the defendants have temporarily banned him from posting or tagging the city in other posts. *Id.* ¶ 26. Further, Lowry highlights Chief Aragon's comments at a city-council meeting concerning his opposition to those critical of the defendants, *id.* ¶ 33, and Chief

Aragon's one-time threat to arrest him for attending a city-council meeting, *id.* ¶ 36. Lowry alleges that the defendants organized a protest in front of his house "with the stated purpose of exiling [him] from the city." *Id.* ¶ 34. From these clashes with the defendants, Lowry alleges he has been "forced to limit his protected speech and other expressive activity for fear of further retaliation." *Id.* ¶ 55.

Taking his allegations as true, Lowry has plausibly alleged that he "curtailed [his] protected speech activities in response to the defendants' actions." *See Keenan*, 290 F.3d at 260. Accordingly, his First Amendment retaliation claim survives on the defendants' non-verbal conduct.

### C. Defamation

Finally, the defendants seek judgment on Lowry's defamation claims against Yancy and Aragon in their individual capacities under the Texas Tort Claims Act. Dkt. 28 at 13–16. The Tort Claims Act governs state-law tort claims against a Texas governmental entity and its employees. The TTCA "creates a limited waiver of sovereign immunity." *Goodman*, 571 F.3d at 394. "A governmental unit in the state is liable [for certain torts] if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *Smith v. Hous. Indep. Sch. Dist.*, 229 F. Supp. 3d 571, 577 (S.D. Tex. 2017) (quoting Tex. Civ. Prac. & Rem. Code § 101.021).

However, "[s]ection 101.106(f) provides for dismissal of an individual defendant if the plaintiff's suit is based on conduct within the scope of his employment with the governmental unit . . . and if it could have been brought . . . against the governmental unit." *Carter v. Diamond URS Huntsville, LLC*, 175 F. Supp. 3d 711, 751 (S.D. Tex. 2016). In that case, "the suit is considered to be against the employee in the employee's official capacity only." Tex. Civ. Prac. & Rem. Code § 101.106(f). An official-capacity suit is "not a suit against the employee; it is, in all but name only, a suit against the governmental unit." *Alexander v. Walker*, 435 S.W.3d 789, 791 (Tex. 2014) (quoting *Tex. Adjutant Gen.'s Off. v. Ngakoue*, 408 S.W.3d 350, 357 (Tex. 2013)).

The Tort Claims Act defines "scope of employment" broadly: "the performance for a governmental unit of the duties of an employee's office or employment and includes being in [or] about the performance of a task lawfully assigned to an employee by competent authority." *Tipps v. McCraw*, 945 F. Supp. 2d 761, 766 (W.D. Tex. 2013) (quoting Tex. Civ. Prac. & Rem. Code § 101.001(5)). "Simply stated, a governmental employee is discharging generally assigned job duties if the employee was doing his job at the time of the alleged tort." *Garza v. Harrison*, 574 S.W.3d 389, 401 (Tex. 2019). When the Tort Claims Act applies, it "provides the appropriate

avenue for dismissal of an employee who is considered to have been sued in his official capacity." *Alexander*, 435 S.W.3d at 791 (citations omitted). The Tort Claims Act "strongly favors dismissal of governmental employees." *Tipps*, 945 F. Supp. 2d at 766.

Lowry has alleged that Yancy and Aragon defamed him when they called him a domestic terrorist during a city-council meeting. Dkt. 24 ¶¶ 95, 100. Invoking the Tort Claims Act, the defendants argue that the defamation claims must be dismissed because the "comments were at the very least *connected* to the officials' job duties." Dkt. 28 at 16. Lowry responds that "being an elected official is not a license to defame" and that the defendants' position is "absurd." Dkt. 31 at 10. But because Lowry alleges that Yancy and Aragon made these defamatory comments while performing one of their job duties—attending and participating in a city-council meeting—they were acting within the scope of their employment when the alleged torts occurred. *See Garza*, 574 S.W.3d at 401. And Lowry could have brought the same defamation claims against La Marque. *See Ferebee v. Law Office of Frank Powell*, No. 01-22-00681-CV, 2023 WL 5918110, at *6 (Tex. App—Houston [1st Dist.] Sept. 12, 2023, no pet.). Accordingly, the court renders judgment for the defendants on Lowry's defamation claims.

\*   \*   \*

For the foregoing reasons, the court grants the defendants' motion for judgment on the pleadings in part and denies it in part. Dkt. 28. The court renders judgment in the defendants' favor related to the alleged verbal epithets that Lowry alleges establish a First Amendment violation. The court also renders judgment for Yancy and Aragon on Lowry's defamation claims against them. The motion is denied in all other respects.

Signed on Galveston Island this 25th day of January, 2024.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE